UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LUIS AGOSTO,

                    Plaintiff,

       -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; KEISHA MCCOY-DAILEY,
Principal of P396K, the Sid-Miller Academy;
MICHELLE PATROVANI, former Assistant
Principal of P396K, The Sid-Miller Academy;
SHANLA KNIGHT, P396K Payroll Secretary,

                    Defendants.

**MEMORANDUM AND ORDER**
24-cv-01738-LDH-LKE

LaSHANN DeARCY HALL, United States District Judge:

Luis Agosto ("Plaintiff"), proceeding pro se, brings the instant action against the New York City Department of Education (the "NYC DOE"), and Keisha McCoy-Dailey, Michelle Patrovani, and Shanla Knight, in their official capacities (collectively "Defendants"), asserting claims of employment discrimination, failure-to-promote, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  (Compl., ECF No. 1.)    Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint in its entirety.  (Def.'s Mem. L. Supp. Mot. Dismiss ("Mot. Dismiss"), ECF No. 16.)

## BACKGROUND[1]

Since 1999, Plaintiff has been employed by the NYC DOE as a school aide at PS 396K (the "School"). (Compl. ¶¶ 1, 3.) The administration of the School consists of Keisha McCoy-Dailey, the Principal; Michelle Patrovani, the Assistant Principal; and Shanla Knight, the Payroll Secretary. (*Id.* ¶ 4.)

On November 22, 2022, Knight circulated an email to several school aides, including Plaintiff, with information about a professional development course offered to those interested in becoming a supervising school aide (the "Course"). (*Id.* ¶ 7.) The email instructed those interested in the Course to inform Knight of their desire to be registered. (*Id.* ¶ 7.) On the same day, Plaintiff was copied on an email from Patrovani to Dailey questioning whether a school aide named Wenda Stewart would be a good candidate for the Course. (*Id.* ¶ 8.) On November 23, 2022, Plaintiff emailed Knight, copying Dailey, to express his interest in registering for the Course. (*Id.* ¶ 9.) That same day, Plaintiff sent a second email to Knight to reiterate his interest. (*Id.* ¶ 10.) Knight responded to Plaintiff's email instructing him to "see [her]" on Monday. (*Id.* ¶ 11.) On that Monday, November 28, 2022, Knight informed Plaintiff that she was "under the impression [that] Principal Dailey had already selected someone else to take the [C]ourse" but that Knight would speak with Dailey for more information. (*Id.* ¶ 12.) Plaintiff alleges that, upon information and belief, there were no limitations on the number of registrants for the

---

[1] The following facts are taken from the Complaint, as well as documents enclosed with the Complaint. These facts are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.")

.

Course.  (*Id.*)  On December 2, 2022, Plaintiff spoke with Knight to follow up on the status of his registration for the Course and was informed that registration had closed on November 30, 2022.  (*Id.* ¶ 13.)  That same day, Plaintiff sent an email to Dailey reiterating his interest in registering for the Course and indicating that he had first expressed interest before the November 30th deadline.  (*Id.* ¶ 14.)  The next day, on December 3, 2022, Plaintiff sent a follow-up email to Dailey inquiring into his registration status for the Course.  (*Id.* ¶ 15.)  Dailey informed Plaintiff that registration had closed and Plaintiff was not registered for the Course.  (*Id.* ¶ 16.)  On December 13, 2022, Patrovani called Plaintiff to "apologiz[e]" and explain that Principal Dailey chose who was going to be enrolled in the Course.  (*Id.* ¶ 17.)

On January 6, 2023, Plaintiff self-enrolled in and completed a CPR certification course.  (*Id.* ¶ 18.)  On January 12, 2023, Plaintiff interviewed with Dailey, "Pupil Accountant Secretary" Marcus Morales, and "AP" Junie Louis-Jean for the position of school aide supervisor (the "Position").  (*Id.* ¶ 19.)  Five days later, Plaintiff learned that he was not selected for the Position.  (*Id.* ¶ 20.)  That same day, Plaintiff learned that Wenda Stewart was selected for the Position.  (*Id.* ¶ 21.)  Plaintiff alleges that "Dailey stated to [the other interviewers] that despite [Plaintiff's] qualifications for the [P]osition," Plaintiff "could not be promoted" because he had not completed the Course.  (*Id.* ¶ 22.)  On or about March 2023, Plaintiff enrolled himself in the Course.  (*Id.* ¶ 23.)

Historically, Plaintiff was assigned to "A.M. bussing, cafeteria monitoring, and occasional bathroom/hall monitoring[.]"  (*Id.* ¶ 25.)  Following the promotion of Stewart to the Position, Plaintiff received "less preferable assignments" consisting "almost exclusively [of] bathroom/hall monitoring all day."  (*Id.*)  Around this time, Plaintiff began receiving "critical

3

disciplinary emails" regarding his tardiness to one of his assignments and being more careful in his monitoring duties.  (*Id.* ¶¶ 26-28.)

Plaintiff filed a complaint with the Equal Opportunity Employment Commission (the "EEOC") in July 2023 and with the New York State Division of Human Rights (the "DHR") in August 2023, alleging discrimination on the basis of national origin in each complaint.  (*Id.* ¶¶ 31-32.)  After filing complaints with the EEOC and the DHR, respectively, Plaintiff "experienced a number of retaliatory actions such as verbal reprimands, unwarranted disciplinary emails, and changes in [his] assignments."  (*Id.* ¶ 33.)  In the academic year following Plaintiff's complaints, he was "assigned strictly to hallways/bathroom monitoring duty."  (*Id.* ¶ 35.)  In October 2024, Plaintiff's colleague informed Plaintiff that Daily and Stewart instructed Plaintiff's colleague "not to ask [Plaintiff] for any assistance whatsoever."  (*Id.* ¶ 36.)

In December 2023, Plaintiff received a notice from the EEOC (the "Notice").  (*Id.* at 14.) The Notice informed Plaintiff that, while the EEOC was unable to investigate and conciliate his complaint, Plaintiff had the right to institute a civil action under Title VII within 90 days of Plaintiff's receipt of the Notice.  (*Id.*)

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id.*  Although this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at a trial" on a motion to dismiss,

4

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

### I.     Title VII

#### A.  Individual Liability

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  As a threshold matter, Defendants argue that any Title VII claim brought against the individual defendants must be dismissed as a matter of law.  (Mot. Dismiss at 9.)  Defendants are correct.  That is, Title VII does not provide for individual liability, even for those in a supervisory role over the Plaintiff.  *See Guerra v. Jones*, 421 Fed. Appx. 15, 17 (2d Cir. 2011) (dismissing Title VII claims as to the individual defendants because Title VII does not "subject individuals, even those with

5

supervisory liability over the plaintiff, to personal liability"). Accordingly, Plaintiff's claims against individual Defendants McCoy-Dailey, Patrovani, and Knight are dismissed.

## B. Discrimination

Employment discrimination claims brought under Title VII are analyzed under the three-step burden-shifting framework. *McDonnell Douglas Corp. v. Green. Dixon v. International Federation of Accountants*, 416 Fed.Appx. 107 (2d Cir. 2011) (citing 411 U.S. 792 (1973)). At the first step, a plaintiff carries "the initial burden under [Title VII] of establishing a prima facie case of racial discrimination." *McDonnell Douglas*, 411 U.S. at 802. The burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Then, "[plaintiff] must . . . be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext." *Id.*

A prima facie case of discrimination exists where: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for a particular position of employment; (3) plaintiff suffered an adverse employment action by the defendant employer; and (4) there is some minimal evidence suggesting an inference that the employer acted with discriminatory motivation. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). That said, to survive a motion to dismiss, a plaintiff need not allege facts satisfying each of the four elements. *Alleyne v. NAACP Legal Defense and Educ. Fund, Inc.*, No. 14-cv-6675, 2015 WL 6869731, at *2 (E.D.N.Y. Nov. 6, 2015). Rather, at the pleading stage, a plaintiff must only plausibly allege facts that would support a finding that the employer took adverse employment action against him and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn,* 795 F.3d at 311; *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("On a motion to dismiss, the question is . . . whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination.").

6

In this case, Defendants argue that Plaintiff fails to meet even this relaxed standard because Plaintiff failed, among other things, to adequately allege that he suffered an adverse employment action. (Mot. Dismiss at 12-16.) On this point, the Court disagrees.

An "adverse employment action in violation of Title VII" is defined as a "materially adverse" change in the terms and conditions of a plaintiff's employment. *Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002). Such change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities . . . . " *Id.* (analyzing adverse employment action in the context of a Title VII employment discrimination claim on the basis of Plaintiff's race).

Courts in this circuit have long recognized that a "denial of training that may lead to promotional opportunities" may constitute adverse employment action. *Grana v. Potter*, No. 06-CV-1173, 2009 WL 425913, at *12 (E.D.N.Y. Feb. 19, 2009) (quoting *Little v. NBC*, 210 F.Supp.2d 330, 384 (S.D.N.Y. 2002)). This is particularly so when a plaintiff shows "material harm from a denial of training, such as a failure to promote or a loss of career advancement opportunities." *Cruz v. New York State Dep't of Corr. & Cmty. Supervision*, No. 13 CIV. 1335 AJN, 2014 WL 2547541, at *5 (S.D.N.Y. June 4, 2014) (quoting *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F.Supp.2d 460, 468 (S.D.N.Y. 2013)). In assessing the sufficiency of a plaintiff's allegations, courts look to whether the plaintiff has adequately alleged that their "opportunities for career growth or the employee's compensation" were materially harmed by the defendant's denial of the training opportunity. *Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 280 (S.D.N.Y. 2016). Here, Plaintiff alleges that Defendants refused to register him for the Course. (Compl. ¶ 6.) Plaintiff also alleges that the Course was a prerequisite for the position without which Plaintiff was ineligible for this promotional opportunity. (*See id.* ¶ 22.)

These allegations are sufficient to plead an adverse employment action. This, however, does not end the Court's inquiry.

To survive this motion, Plaintiff must have sufficiently alleged that Defendants took the adverse action against him at least in part for a discriminatory reason. *Vega*, 801 F.3d 72 at 87. A discriminatory motive may be proven either directly, by alleging facts that show an "intent to discriminate," or indirectly, by alleging "circumstances giving rise to an inference of discrimination." *Id.* Defendants maintain that Plaintiff failed to do so because the complaint includes only conclusory allegations as to Defendants' motive for their decision not to promote Plaintiff. (Mot. to Dismiss. at 12.) The Court agrees.

With respect to his discrimination claims, Plaintiff alleges only that he "believe[s] [Defendants] willfully and intentionally declined to enroll him into [the Course] as a means to effectuate a discriminatory motive to appoint Ms. Stewart, a fellow Trinidadian female, to [the Position over him]." (Compl. ¶ 29.) That is, Plaintiff pleads, as the sole basis for his discrimination claim, that Defendants McCoy-Dailey and Petrovani, like Ms. Stewart, are also of Trinidadian ethnicity. (Compl. ¶¶ 4, 29.)[2] Plainly, this allegation, alone, is insufficient to plead a discriminatory motive. Plaintiff fails to include any allegation that might directly or indirectly demonstrate Defendant's discriminatory intent. For example, Plaintiff fails to allege that Defendant made "disparaging comments regarding [his] protected class." *Watson v. Richmond Univ. Med. Ctr.*, 408 F. Supp. 3d 249, 262 (E.D.N.Y. 2019). Nor does he allege "that similarly situated comparators outside of [his] protected class were treated more favorably than [him]." *Id.* A plaintiff's "mere subjective belief that he was discriminated against . . . does not sustain a .

---

[2] Casting further doubt on Plaintiff's allegation of Defendants' discriminatory motive is the fact that Defendant Knight is not even of Trinidadian ethnicity herself. (*Id.* ¶ 4.)

. . discrimination claim." *Moore v. Kingsbrook Jewish Medical Center,* No. 11–CV–3625, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (quoting *Gue v. Suleiman,* No. 10–CV–8958, 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27, 2012)). Here, Plaintiff's belief that Defendants discriminated against him on the basis of his ethnicity is insufficient to support a finding of discriminatory motive.[3] Plaintiff's employment discrimination claim, therefore, fails under Title VII.

### C. Failure-to-Promote

To establish a prima facie claim for failure-to-promote under Title VII, a plaintiff must allege that: "(1) []he is a member of a protected class; (2) []he 'applied and was qualified for a job for which the employer was seeking applicants;' (3) []he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Oliver Cyrus v. Lockheed Martin Corporation*, No. 22-CV-4115, 2025 WL 964016, at *7 (E.D.N.Y. Mar. 31, 2025) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009)). Of course, a failure-to-promote claim can be alleged where, as here, the subject position was filled.[4] When the subject position has been filled in failure-to-promote cases, the Second Circuit considers "whether 'the circumstances of the [failure to promote] give rise to an inference of discrimination.'" *Oliver Cyrus*, 2025 WL

---

[3] Further damning Plaintiff's claim, the complaint identifies a non-discriminatory motive for Defendants' decision—Plaintiff had not completed the Course, a prerequisite for the Position. (Compl. ¶ 22.) *See Crespo v. Harvard Cleaning Servs.*, 2014 WL 5801606, at *7 (S.D.N.Y. Nov. 7, 2014) (finding that even a defendant's "good-faith mistake in the course of evaluating [a plaintiff's] job qualifications . . . suggest[ed] a legitimate non-discriminatory reason for not offering [a plaintiff a] permanent position," and, thus, "undercut rather than support[ed]" a plaintiff's claim for discrimination.)

[4] In January 2023, Plaintiff interviewed with Defendant Dailey and other employees of the School for the Position. (Compl. ¶ 19.) The Court infers from the occurrence of an interview that Plaintiff applied for the Position in satisfaction of the application element of a failure-to-promote claim. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) ("A specific application is required to ensure that, at the very least, the plaintiff employee alleges a particular adverse employment action" (citation and internal quotation marks omitted). Five days following Plaintiff's interview, he learned that he was not selected for the Position. (Compl. ¶ 20.)

964016, at *7 (quoting *Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 486 (E.D.N.Y. 2016)).  This "requires the plaintiff to show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare h[im]self.'" *Id.* (citation and internal quotation marks omitted).  "In the context of a promotion, that means comparing the qualifications of the plaintiff with those of the person promoted." *Id.* (citation and internal quotation marks omitted).

Defendants maintain that Plaintiff cannot make out a failure to promote claim because Plaintiff was not qualified for the position.  (Mot. Dismiss at 11-12).  Indeed, as Defendant argues, Plaintiff concedes that he was not qualified for the Position because, as Plaintiff alleged, he has not completed the Course, which was required for any qualified applicant.  (See Mot. Dismiss at 11; Compl. ¶ 22.)  True.  Even if Plaintiff alleged that he was qualified for the position—which he was not—he fails to establish that the individual hired—that is, the alleged comparator—was "significantly less qualified for the [P]osition" than him. *Toussaint v. City of New York*, No. 19 CIV. 1239, 2021 WL 4429316, at *8 (S.D.N.Y. Sept. 27, 2021) (citing An*yanwu v. City of New York*, No. 10-Civ.-8498, 2013 WL 5193990, at *14 (S.D.N.Y. Sept. 16, 2013) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 139 (2d Cir. 2003)).  Here, the only comparison that Plaintiff makes between the qualifications that he possessed and those of Stewart is that Plaintiff had been employed by Defendant NYCDOE for a longer period of time.  (Compl. ¶ 6.) That comparison only speaks to Stewart's tenure not her qualifications, and nothing in Plaintiff's complaint suggests that Stewart was less qualified.  On the face of the complaint, Stewart was more qualified because she had taken the Course.  (*See* Compl. ¶¶ 6, 21-22.)  Thus, Plaintiff's failure-to-promote claim too fails under Title VII.

10

### D. Retaliation

Title VII prohibits employers from retaliating "against any ... employee[ ] ... because [that individual] has opposed any practice" made unlawful by Title VII.  42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must "plead facts that would tend to show that: [](1) []he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging h[im]; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark,* 508 F.3d 106, 115 (2d. Cir. 2007) (citing *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004)).

### 1. Disadvantageous Employment Action

According to the complaint, following Plaintiff's filing of complaints with the EEOC and DHR in July 2023 and August 2023, respectively, he "experienced a number of retaliatory actions such as verbal reprimands, unwarranted disciplinary emails, and changes in [his] assignments." (Compl. ¶¶ 33, 39.)  The standard for pleading adverse employment action is "more relaxed for claims of retaliation than for claims of employment discrimination." *Adams v. City of New York*, 837 F.Supp.2d 108, 121 (E.D.N.Y. 2011).  Specifically, "in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90.  Even measured against this standard, Plaintiff's allegations are insufficient to withstand Defendant's motion.  Here, Plaintiff alleges that he was verbally reprimanded for eating raisins and received an email reprimanding him for sitting inappropriately in the hallway.  (Compl. ¶¶ 38-39.)

Plaintiff also alleges the change in his work assignments from "A.M. bussing, cafeteria monitoring, and occasional bathroom/hall monitoring" to "hallways/bathroom monitoring duty" are adverse employment action.  (*Id.* ¶¶ 25, 35.)  "Whether a particular reassignment is

11

materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (internal quotation marks omitted) (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998)).  Even under the more liberal standard for adverse employment action in retaliation cases, this allegation does not carry the day.  For these reasons, Plaintiff's reassignment does not constitute an adverse employment action in the context of retaliation.

### 2.  Causal Connection

Even if Plaintiff were to establish that the change in his job responsibilities constituted an adverse employment action, his retaliation claim would fail for his inability to establish a causal connection.  Plaintiff may plead a causal connection by alleging that Defendant made some statement or engaged in some activity that demonstrates the relationship between the protected activity and the alleged retaliatory conduct—that is, "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn,* 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000)).  Plaintiff's complaint fails to make any such allegation.

Alternatively, a plaintiff can establish a causal connection "indirectly[] by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Id.*  Here, Plaintiff does not specify when Defendants changed his job responsibilities, only that it occurred after Plaintiff filed his complaints.  (Compl. ¶ 33.)  Plaintiff's failure to specify a time period of the alleged adverse employment action prevents the Court from any ability to assess the temporal proximity between Plaintiff's engagement in protected activity and the alleged adverse employment action for purposes of determining a causal connection.  *See*

12

*Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) (denying plaintiff's retaliation claim where "it is impossible to determine whether 'the temporal proximity [between the two events] is very close.'") (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  Plaintiff's complaint also fails to raise any allegation of disparate treatment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's complaint is DISMISSED with prejudice.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York       __/s/ LDH_____
       February 18, 2026        LASHANN DEARCY HALL
                                United States District Judge